## No. 151.

### STATE OF LOUISIANA *v.* HENRY WENGER.

A statute providing for a license for any fixed place where musical, minstrel, concert, dancing, etc., performances are held applies to a Beer Saloon where an orchestra is provided merely to draw customers, the license being imposed upon the place of the performance, rather than the business, in this particular case.

When a litigant demands a nullity he must in his pleadings recite distinctly the ground on which he relies.

*Braughn Buck & Dinkelspiel,* attorneys.

*Buisson & Ker,* attorneys.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

The defendant is sued for $1,000 state license of 1881, as coming under section 10 of the revenue law of 1881; being act 119 of the session of said year 1880. The clause in question is as follows: "And provided further, that for any place where can-can, clodoche or other female dancing or sensation performance, or statuary exhibitions are shown; or any other fixed place of either theatrical, musical, minstrel, concert, dancing or variety performance, exhibition, amusement or show, the license shall be $1,000 in cities with a population of more than 25,000 inhabitants, etc."

It is shown that Wenger conducts a respectable Beer Saloon in this city, and that to attract customers, he keeps a regular orchestra, performing music, to hear which many persons attend.

Before trial upon the merits, under section 17 of the same act, counsel for state ruled defendant to show cause in three

days why he should not discontinue conducting business, or pay the license demanded.    Upon hearing, the judge *a quo* made the said rule absolute, and Wenger has appealed.

It is contended, in the first place, that the law in question is violative of article        of the constitution of the state relative to the grading of licenses.   The answer, however, to the rule, is in general terms; with no specification of the article or section of the constitution or constitutions, which it is claimed have been infringed.   We therefore cannot notice this defense.   When a litigant demands a nullity even of an ordinary every day contract, he must, in his pleadings, recite distinctly the grounds upon which he relies.   If, in such a matter, this is required, how shall any one be permitted to attack in sweeping and indefinite terms, an act of solemn legislation of the state, and ask us to declare that a co-ordinate branch of the government has violated the fundamental law.

The defendant next contends that the license in question is aimed at places in which the amusement, musical or other, is conducted either principally, or in connection with the sale of liquors, etc., to serve by charging for admissions as a source of revenue; and not to a place like his, when the object is simply, by such attraction, to draw customers to his bar.   We are asked whether, a person or persons, selecting some fixed place for regular concerts, or other diversions, to which entrance is only by invitation without charge, could be held to pay the sum demanded in the suit.   Taking the provision under consideration by itself, it might be sweeping enough to apply to such a case; but it is only one clause of license system and it must be interpreted so as to harmonize with its fellows. The title of the act No. 119 is substantially the same as that preceding other statutes of a similar nature and declares the legislation it introduces to be for the purpose of levying collecting an annual license from persons, etc., "pursuing any trade, profession, vocation, calling or business."   The first section of the same act, which is the general levying clause declares that the annual license tax shall be imposed upon "each person, association of persons, and corporations, pursuing any trade,

profession, vocation, or business in the state of Louisiana, except those expressly exempted from such tax by Arts. 206 and 207 of the Constitution."

Thus, taking the whole law, it is evident that the statute applies in all its parts, only where the performance or the thing in question is a mode of business, trade or profession and as such is the source of profit, or means of livelihood. Under its provisions, the clause taxing restaurants could not be enforced against one who charitably distributes food gratuitously among the poor, nor could the clause taxing hotels, lodging houses, etc., be extended so as to include asylums, where orphans or other helpless persons are lodged and fed.

It does not however, follow that the profit to be derived in any case in order to bring into operation the provision in question, must be direct; or that it must be realized in any particular manner. Our principal theatres, and other prominent places of amusement, it is true, impose a regular admission fee or charge but they do this simply for their own convenience, and because they consider it the most profitable method. They might admit without payment of entrance money and charge for seats, or programs, or refreshments, or take up voluntary collections within and still be conducting a theatre, or place of amusement. There can be no doubt but that the proprietors of these places would speedily adopt any of these methods last mentioned in preference to demanding gate, or door money, if they were not satisfied that they would prove less convenient and remunerative than the one now in vogue. Counsel for defendant supposes a case of a saloon for the sale of liquors, where handsome pictures, or other decorations, are displayed, or free lunches given, in order to attract customers to the bar and suggests that the employment of music for the same purpose should be governed by the same principle. He asks if, if the one case a proprietor could be held for the license chargeable upon an art museum and in the other that demandable of a keeper of a resaurant. Not undertaking, without necessity to respond to this last question, it is sufficient to say that the legislature has guarded

against any confusion of this kind. While in the clause relating to museums and restaurants, the tax is imposed upon the business, here it is imposed upon the place where those dances, etc., are held. The latter word, is certainly more sweeping than the former and requires only that these things, in order to be taxed, should be at a fixed place, and not that it shoud be a business whether fixed or migratory.

An examination of the whole of this section 10 convinces us that the particular clause we are considering was in reality the incentive for just such places as that of defendant; that is where the attractions of a side or other show, are called in as an accessory to draw customers to a drinking or gambling saloon of some sort. We support this conclusion by reference to the fact that all the remainder of that section is diverted to classifying for taxation theatres, opera houses, amphitheatres, academies of music, museums, menageries, circuses, exhibitions or performances, or traveling shows (all as businesses).

So complete is the classification, that there is no necessity or room for the provision under discussion, if applicable alone to regular establishments of the kind named; we must, therefore, perforce, from this fact and the substitution of the word "place", instead of business, as the latter is employed in the remaining connections, conclude that it is those shows, which are mere appendages, or accessories of some other business that it was intended to reach.

It may be and doubtless is, as defendant contends, that the lawmaker really intended, by this provision to suppress places of a vile nature where women of loose habits are engaged as waitresses, and gambling is conducted about the premises. It is also clear, from the evidence, that defendant's saloon is not of this character; but the law has been made sweeping in its nature, and we cannot impose restrictions upon it.

The judgment appealed from is in our opinion correct and it is affirmed with costs.